2022 UT App 32

# THE UTAH COURT OF APPEALS

MARVEL M. MARTIN,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Per Curiam Opinion
No. 20210302-CA
Filed March 10, 2022

Original Proceeding in this Court

Marvel M. Martin, Petitioner Pro Se

Amanda B. McPeck, Attorney for Respondent

Before JUDGES MICHELE M. CHRISTIANSEN FORSTER,
DAVID N. MORTENSEN, AND RYAN M. HARRIS.

PER CURIAM:

¶1 Marvel M. Martin seeks judicial review of the Workforce Appeals Board's (the Board) decision denying him benefits and establishing a fault overpayment.

¶2 Martin argues that the Board misinterpreted the applicable statutes and incorrectly denied him benefits. This case presents mixed standards of review. "We review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *Nielsen v. Retirement Board*, 2019 UT App 89, ¶ 10, 443 P.3d 1264 (cleaned up). However, if the Board has correctly interpreted the applicable statutes, the Board's ultimate decision to grant or deny benefits "is entitled to deference" because it involves a "mixed question of law and fact" that is "fact-intensive" and therefore "does not lend itself to consistent resolution by a uniform body of

appellate precedent." *See Carbon County v. Workforce Appeals Board*, 2013 UT 41, ¶ 7, 308 P.3d 477 (cleaned up).

¶3      Martin moved to Colombia to attend school in 2019 and 2020. While he was going to school, he worked full time teaching English as a Second Language online. He continued this work into 2021. In 2020 Martin claims that his client numbers decreased due to the COVID-19 public health emergency, even though he continued being available to teach the same hours he taught prior to the pandemic. Martin believes that he is entitled to benefits because his wages decreased due to COVID-19. In October of 2020, Martin returned to Utah. He continued his full-time online teaching but also supplemented his income by obtaining a position at Amazon. During his time working at Amazon, Martin experienced symptoms consistent with COVID-19 and missed work while he was in isolation. However, Amazon provided him with sick leave for the time he was in isolation and he was paid for the time he missed. Martin also sought COVID-19 relief benefits for this period of time, arguing that his income was significantly diminished due to COVID-19.

¶4      Martin sought benefits under the Pandemic Unemployment Assistance (PUA) program. PUA is a federal program established by the Coronavirus Aid, Relief, and Economic Security (CARES) Act that provides unemployment benefits to certain individuals whose employment was negatively and significantly affected by the COVID-19 public health emergency. Martin first argues that the Board erred in denying him PUA benefits from the period of January 26, 2020, through October 17, 2020. In so arguing, Martin asserts that he was entitled to benefits even though he was living in Colombia during that time.

¶5      To be eligible for PUA benefits, a claimant must be a "covered individual" under the CARES Act. *See* 15 U.S.C. § 9021(b). A "covered individual" is one who "is not eligible for

regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation." *Id.* § 9021(a)(3)(A)(i). The individual must also be "otherwise able to work and available for work *within the meaning of applicable State law*, except the individual is unemployed, partially unemployed, or unable or unavailable to work because" of one of the specific COVID-19 public health emergency related reasons enumerated in the CARES Act and in subsequent guidance from the U.S. Department of Labor (DOL). *Id.* § 9021(a)(3)(A)(ii)(I) (emphasis added).

¶6    The DOL has provided guidance to the states for administering the PUA program in a series of Unemployment Insurance Program Letters (individually, a UIPL). In UIPL No. 16-20, Change 4, the DOL explained that

> [w]hen determining the appropriate course of action in administering the PUA program, states should first consult . . . the CARES Act, as amended by the Continued Assistance Act, and the subsequent operating instructions provided by the Department. Where the CARES Act, as amended, and the operating instructions are silent, states should refer to the Disaster Unemployment Assistance (DUA) regulations at 20 C.F.R. Part 625.

Unemployment Insurance Program Letter No. 16-20, Change 4, at 3 (January 8, 2021). In turn, the Disaster Unemployment Assistance (DUA) regulations require the application of state law to such claims. *See* 20 C.F.R. § 625.11 ("The terms and conditions of the State law of the applicable State for an individual, which apply to claims for, and the payment of regular compensation, shall apply to applications for, and the payment of, DUA to each such individual . . . ."). Thus, in determining whether a claimant is eligible for PUA benefits, the Board should first review the language and requirements of the CARES Act (and the

subsequent operating instructions provided by the Department). If the CARES Act does not provide specific guidance on a particular issue, then state law determines eligibility for benefits.

¶7     Martin asserts that he is entitled to PUA benefits even though he was living out of the country during the applicable period. However, Martin does not cite any provision of the CARES Act (or the guidance provided by the DOL) that deals with the eligibility of claimants for benefits if they are living outside the country, nor can the court locate one. Instead, he points us to the U.S. State Department website, which generally indicates that individuals who are "planning to retire abroad or already live outside of the United States, . . . may be entitled to receive services from" certain U.S. government agencies, including the DOL. United States Dep't of State, *Federal Benefits and Obligations Abroad*, https://travel.state.gov/content/travel/en/international-travel/while-abroad/federal-benefits-and-obligations-abroad.html (last visited Feb. 25, 2022). This generalized statement does not demonstrate that a claimant living outside the United States is entitled to PUA benefits or any other specific benefit offered by the United States government; it merely states that such a claimant may be entitled to services depending on the terms of the applicable statute. Therefore, because no section of the CARES Act dictates whether citizens living outside the United States are entitled to PUA benefits, the determination is made using applicable Utah law.

¶8     Utah law allows for unemployment benefits to be paid to residents located in a foreign country only in very limited circumstances. Utah Code section 35A-4-403(3) provides that "[a]n individual located in a foreign country for three or more days of a week and who is otherwise eligible for benefits is only eligible to receive benefits for that week if" two conditions are satisfied: (1) the individual must be legally authorized to work in the foreign country; and (2) the state and the foreign country

must "have entered into a reciprocal agreement concerning the payment of unemployment benefits." Utah Code Ann. § 35A-4-403(3) (LexisNexis 2020); *see also* Utah Admin. Code R994-403-302(2) ("Unemployment benefits cannot be paid to a claimant located in a foreign country unless the claimant has authorization to work there and there is a reciprocal agreement concerning the payment of unemployment benefits with that foreign country."). "Canada is the only country with which Utah has a reciprocal agreement." Utah Admin. Code R994-403-302(3). Because Martin was located in a country with no reciprocal agreement concerning the payment of unemployment benefits, he did not qualify for benefits under Utah law during the months in question. Accordingly, because the CARES Act defaulted to the use of state law to determine benefits when the claimant was outside of the county, Martin was not eligible for benefits for the weeks that he was living in Colombia. The Board correctly interpreted the applicable statutes. As a result, the Board did not abuse its discretion in denying Martin benefits for the weeks he was located in Colombia.

¶9     Martin next asserts that the Board misinterpreted the law and abused its discretion in denying him PUA benefits once he returned to Utah. A claimant is not eligible for PUA benefits unless the claimant is unemployed or partially unemployed as a result of one of the COVID-19 situations identified in the CARES Act. Specifically,

> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

> (bb) a member of the individual's household has been diagnosed with COVID-19;

> (cc) the individual is providing care for a family member or a member of the individual's

household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section . . . .

15 U.S.C. § 9021(a)(3)(A)(ii)(I).

¶10    The Board determined that the only possible subsections the might apply to Martin were (aa), (ff), and (kk). Martin does not allege that any other possible subsections applied to the facts of his case. Accordingly, we limit our analysis to those three subsections. Subsections (aa) and (ff) potentially applied because, when Martin returned to Utah from Colombia, he obtained a part-time job with Amazon to supplement his income derived from his online teaching. In February 2021, Martin began experiencing symptoms linked with COVID-19 and was advised to self-quarantine while on medical leave from his absence at Amazon. Thus, for this relatively brief period of time in February 2021, he potentially lost income under subsection (aa), i.e., he had been diagnosed with COVID-19 or was experiencing symptoms of COVID-19, and (ff), i.e, he been advised to self-quarantine due to experiencing symptoms related to COVID-19. The CARES Act, however, provides that an individual is not eligible for PUA benefits while "receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I)." *Id.* § 9021(a)(3)(B)(ii). Amazon provided him paid benefits for the time he was sick. Thus, under the clear language of the statute Martin would not be entitled to benefits under these subsections. Accordingly, the Board correctly interpreted the statutes and did not abuse its discretion in denying him PUA benefits under those two subsections.

¶11    Finally, Martin claims he was entitled to benefits under subsection (kk) because he experienced a diminished workload as an online teacher because of COVID-19. The Board found that this subsection did not apply because Martin could not establish

that any loss of income was the result of COVID-19. The DOL has stated that a self-employed individual may be eligible for PUA benefits under subsection (kk) if the individual "experiences a significant diminution of work as a result of COVID-19." Unemployment Insurance Program Letter No. 16-20, Change 1, at I-11 (April 27, 2020) (cleaned up). This requires a claimant to show that the "ability to continue performing his or her customary work activities is *severely limited* because of the COVID-19 public health emergency." Unemployment Insurance Program Letter No. 16-20, Change 2, at 2 (July 21, 2020) (emphasis added). Further, the DOL has indicated that, under subsection (kk), a claimant's reduction of work must be the "direct result of the COVID-19 public health emergency." Unemployment Insurance Program Letter No. 16-20, at I-6 (April 5, 2020). A "determination about whether actions are a 'direct result' . . . should be made based on" the DUA regulation found at 20 C.F.R. 625.5(c). *Id.* at I-7. That regulation, in turn, instructs that unemployment is considered a direct result of a major disaster if "the unemployment is an immediate result of the major disaster itself, and not the result of a longer chain of events precipitated or exacerbated by the disaster." 20 C.F.R. § 625.5(c).

¶12   The Board found that there was insufficient evidence to demonstrate that any decrease in students for Martin's online teaching business was caused by COVID-19. Martin asserted that he lost students because of COVID-19, which caused a decrease in revenue. When asked about how he knew this was the case, Martin speculated that "people turned to online work and . . . I don't think people . . . made English learning a priority for their kids maybe, I don't know, . . . I don't have an answer for that."

¶13   Based on this evidence, the Board was justified in concluding that Martin had not carried his burden of demonstrating that his loss of income occasioned by fewer students taking his class was a direct immediate result of

COVID-19. Any number of other circumstances could have caused the decrease in numbers, even if those circumstances may have been exacerbated by COVID-19. Ultimately, the Board did not err in determining that under the CARES Act, Martin was entitled to PUA under subsection (kk) only if he sustained a significant diminution of work as a direct result of COVID-19. Further, because there was evidence to support its determination that Martin failed to demonstrate that his diminution in work was caused by COVID-19, we defer to the Board's decision.

¶14    We therefore decline to disturb the final decision of the Board.[1]

——————

1. The Board also imposed a fault overpayment; however Martin's brief does not address that issue or otherwise offer any analysis as to how the Board may have erred. Accordingly, we have no occasion to second-guess the Board's determination regarding the fault overpayment. Similarly, Martin made references in his brief to equal protection and violating his civil rights. However, we do not address those issues because they are inadequately briefed. *See Crossgrove v. Stan Checketts Props., LLC*, 2015 UT App 35, ¶ 6, 344 P.3d 1163 (stating that an argument is inadequately briefed "if it merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority" (cleaned up)).