#30041-r-MES
**2023 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DARCY BRACKEN,                          Petitioner and Appellant,

   v.

SOUTH DAKOTA DEPARTMENT OF
LABOR AND REGULATION,
REEMPLOYMENT ASSISTANCE DIVISION,       Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSHUA K. HENDRICKSON
Judge

\* \* \* \*

ERIC C. SCHULTE of
Davenport, Evans, Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota              Attorneys for petitioner
                                       and appellant.


SETH A. LOPOUR
COURTNEY S. CHAPMAN of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota              Attorneys for respondent
                                       and appellee.

\* \* \* \*

ARGUED
MARCH 22, 2023
OPINION FILED **05/10/23**

#30041

SALTER, Justice

[¶1.]     Darcy Bracken appeals administrative and circuit court decisions ordering her to repay $14,080 in Pandemic Unemployment Assistance (PUA) benefits that she had received under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).  We reverse.

**Factual and Procedural Background**

[¶2.]     Bracken and her husband owned and operated the White Tail Ridge Bed and Breakfast in Custer County.  In January 2020, the U.S. Department of Health and Human Services declared a public health emergency relating to the COVID-19 pandemic.  Starting in February 2020, Bracken claimed new bookings at the bed and breakfast ceased and many existing bookings were canceled.  Bracken also reported that the business did not have any guests until the end of May 2020.  The bed and breakfast remained open, but Bracken attributed the overall decline in guests to the pandemic.[1]

[¶3.]     In March 2020, Congress passed the CARES Act, which created a temporary, state-administered PUA benefits program for unemployed individuals, including self-employed workers.  *See* 15 U.S.C. § 9021.  In South Dakota, the Reemployment Assistance Division of the South Dakota Department of Labor and Regulation (the Department) administered the PUA benefits program.

[¶4.]     Bracken applied for PUA benefits, stating in her application that she was self-employed but became unemployed in March 2020 "as a result of COVID-

---

1.     Bracken and her husband eventually closed the bed and breakfast, but after the time period relevant to this appeal.

#30041

19[.]" Responding to the application's prompt to explain the circumstances of her unemployment claim, Bracken wrote, "I own a small bed and breakfast. The travel industry has been hit very hard by COVID19 so we have no business due to it." The Department initially determined Bracken was eligible for PUA benefits and issued a series of payments totaling $14,080, which covered the period from March to Early-August 2020.

[¶5.] However, the Department later determined that Bracken was *not* eligible for PUA benefits following an internal review. In the Department's stated reasoning, Bracken was ineligible for benefits because she was "not considered unemployed" under any of the bases listed in the CARES Act. Consequently, the Department viewed the entire sum of PUA benefits as an overpayment that Bracken was required to repay.

[¶6.] Bracken, proceeding pro se, appealed the Department's determination, and an Administrative Law Judge (ALJ) conducted a hearing at which Bracken testified. The record does not contain a transcript of the hearing, but it does include the ALJ's written decision affirming the Department's overpayment determination, along with findings of fact and conclusions of law.

[¶7.] Several of the ALJ's findings appear to support Bracken's claim that she became unemployed because of the COVID-19 pandemic. For instance, the ALJ found:

1. Claimant was self-employed in the operation of a bed and breakfast[;] . . .
2. Prior to COVID-19, Claimant's business regularly had guests each month[;]

3. In February 2020, Claimant's business had no new reservations and many reservations from prior bookings were cancelled[;]

4. Claimant's business has [sic] no guests until the end of May 2020.

[¶8.] Notwithstanding these findings, the ALJ concluded that Bracken was not unemployed:

> The evidence does not establish that Claimant meets any of the reasons for eligibility identified under the CARES Act. Although Claimant's business experienced a loss of guests during the COVID-19 pandemic, the evidence suggests that the reason for the loss of guests is because of *indirect economic consequences* from the COVID-19 public health emergency. Reductions in the number of guests or a decreased demand for bed and breakfast rooms is, without more, properly considered an indirect result of the COVID-19 public health emergency. Claimant's business was not closed by a state or local order. Claimant was neither required to self-quarantine nor was Claimant diagnosed with COVID-19.

(Emphasis added.)

[¶9.] Bracken requested review of the ALJ's decision from the Department. Still representing herself, she argued, in part, that "[under] the CARES Act, I am not required to provide evidence that I was directly affected by the pandemic, only that I met any [ ] criteria as stated in . . . . the CARES Act[.]" As to this latter point, Bracken quoted the text of an additional criterion for PUA benefits approved by the United States Secretary of Labor, as authorized by the CARES Act:

> Self-employed individuals (including independent contractors and gig workers) who experienced a *significant diminution* of their customary or usual services *because of* the COVID-19 public health emergency, even absent a suspension of services[.]"

U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Change 4 (January 8, 2021) (UIPL 16-20), at 8 (emphasis added).

[¶10.]     The Department did not accept Bracken's interpretation of what we will describe here as the Secretary of Labor's "Self-Employment Rule."[2]  Instead, the Department summarily adopted the ALJ's whole decision and, as a consequence, identified the self-employed eligibility basis as the *only* reason for requiring Bracken to repay the PUA benefits.

[¶11.]     Bracken appealed to the circuit court and continued to press her claim that eligibility for PUA benefits did not require that the "significant diminution" of a self-employed person's business be directly caused by the COVID-19 pandemic in the ways described by the ALJ—i.e., the business was ordered to be closed or Bracken contracted COVID-19 and had to quarantine.  The Department countered with a much broader interpretation of the "because of" text in the Self-Employment Rule, and also asserted for the first time that the evidence was insufficient to support a determination that there had been a significant diminution in the usual business activity at Bracken's bed and breakfast.

[¶12.]     Believing the question before it to be factual and entitled to deference, the circuit affirmed the ALJ's decision, though somewhat reluctantly.  The court explained the decision to affirm "leaves a bad taste in my mouth[,]" noting "*I don't know how your business wouldn't be affected by Covid*, but based on the record I've reviewed I can't make that a clearly erroneous finding."  (Emphasis added.)

---

2.     Though we refer to it as a "rule," we do so in a generic sense because it does not appear to have been promulgated under the provisions of the federal Administrative Procedures Act.

[¶13.] Now with the assistance of counsel, Bracken appeals to this Court claiming the ALJ erred when it determined that she was ineligible to receive PUA benefits because, in the ALJ's view, her bed and breakfast suffered only indirect economic consequences of the COVID-19 pandemic.

## Standard of Review

[¶14.] When reviewing an administrative agency's decision, SDCL 1-26-36 provides the appropriate standard of appellate review. *Christenson v. Crowned Ridge Wind, LLC*, 2022 S.D. 45, ¶ 20, 978 N.W.2d 756, 761 (citation omitted). As relevant here, the statute provides:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> . . .
> (4) Affected by other error of law;
> (5) Clearly erroneous in light of the entire evidence in the record
> . . . .

SDCL 1-26-36.

[¶15.] Here, the circuit court's restraint and fidelity to the clearly erroneous standard of review were commendable, but in our view the question of Bracken's eligibility for PUA benefits is not a factual one. Instead, the eligibility issue implicates the provisions of the CARES Act and, in particular, the Self-Employment Rule—legal questions which we review de novo and without deference. *See Ehlebracht v. Crowned Ridge Wind II, LLC*, 2022 S.D. 19, ¶ 20, 972 N.W.2d 477,

485 (applying de novo standard of review to administrative tribunal's application of law).

## Analysis and Decision

[¶16.] Under the CARES Act, PUA benefits are paid to "any covered individual . . . while such individual is unemployed, partially unemployed, or unable to work . . . ." 15 U.S.C. § 9021(b). Subject to certain requirements that are not implicated here, the statutorily defined term "covered individual" includes those that meet any of the criteria set forth in 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(aa-kk).

[¶17.] Particularly relevant to our discussion is 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(kk), which enables the United States Secretary of Labor to establish additional criteria for PUA benefits eligibility. Acting pursuant to this authority, the Secretary of Labor has issued the Self-Employment Rule, set out above, that allows self-employed people to be considered "covered individual[s]" if they "experienced a *significant diminution* of their customary or usual services *because of* the COVID-19 public health emergency, even absent a suspension of services[.]" U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Change 4 (January 8, 2021) (UIPL 16-20), at 8 (emphasis added).[3]

[¶18.] As a matter of textual interpretation, the phrase—"because of"—is generally described in essential terms as but-for causation:

> In everyday usage, the phrase "because of" indicates a but-for causal link between the action that comes before it and the circumstance that comes afterwards. John carried an umbrella because of the rain. Jane stayed home from school because of

---

3. The excerpt of the Self-Employment Rule set out in the ALJ's decision did not include the "even absent a suspension of services" clause.

> her fever. Dictionary definitions of the phrase reflect this common-sense understanding: "Because of" means "by reason of" or "on account of" the explanation that follows.

*United States v. Miller*, 767 F.3d 585, 591 (6th Cir. 2014) (quoting Webster's Second New International Dictionary 242 (1950); *see also Cause*, *Black's Law Dictionary* (11th ed. 2019) ("The cause without which the event could not have occurred.").[4]

[¶19.] Under any reading of the Self-Employment Rule, the direct vs. indirect dichotomy suggested by the ALJ simply does not exist. Nothing in the text used by the Secretary of Labor indicates that considering the indirect effects of COVID-19 is categorically foreclosed, and the ALJ cited no authority to support this narrow interpretation.

[¶20.] Notably, the "because of" standard in the Self-Employment Rule is different than some of the statutory criteria used to determine PUA eligibility for workers who are not self-employed. These individuals can receive benefits if they "ha[d] to quit his or her job as a *direct result* of COVID-19 . . . [or] . . . the individual's place of employment is closed as a *direct result* of the COVID-19 public health emergency[.]" 15 U.S.C. § 9021(a)(3)(A)(ii)(I) (ii)—(jj). The use of different text to describe PUA eligibility among different types of claimants supports the view that the causation standard is not universal among them.

---

4.  Even if we determined that "because of" was essentially a legal or proximate cause standard, the ALJ's view that Bracken's diminished work had to be directly caused by the COVID-19 pandemic is still not supportable. *See Est. of Gaspar v. Vogt, Brown & Merry,* 2003 S.D. 126, ¶ 6, 670 N.W.2d 918, 921 ("A proximate or legal cause is a cause that produces a result in a natural and probable sequence and without which the result would not have occurred. Such cause need not be the only cause of a result. It may act in combination with other causes to produce a result." (citing SDCL 21–3–1)).

[¶21.]     On appeal, the Department cites other federal regulations—not part of the CARES Act—to support its direct result argument. Specifically, the Department points to separate regulations governing Disaster Unemployment Assistance (DUA) which state the "direct result" standard as a requirement for a self-employed individual's request for unemployment assistance following a natural disaster. *See* 20 C.F.R. Part 625. The Department seeks to import these DUA regulations via a CARES Act provision that allows their use when the CARES Act is *silent or conflicts* with DUA regulations. *See* 15 U.S.C. § 9021(h) ("Except as otherwise provided in this section or to the extent there is a conflict between this section and [the DUA regulations], such [DUA regulations] shall apply to this section . . . .") However, here there is neither silence nor conflict.

[¶22.]     As to the former, 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(kk) expressly authorizes the Secretary of Labor to issue the Self-Employment Rule which both parties agree applies here. There is no silence.

[¶23.]     And there is no conflict. The most the Department offers in this regard is the contrasting standards of the DUA regulation's direct result language and the "because of" test set out in the Self-Employment Rule. But this establishes only that the rules are different, as evidenced by the use of divergent text—not that they are in conflict.[5]

---

5.  The Department notes that the Court of Appeals for Utah applied this direct cause analysis in *Martin v. Dep't of Workforce Servs.*, 507 P.3d 847 (Utah Ct. App. 2022). But we think the *Martin* decision is not helpful because it does not appear the court was confronted with the same textual interpretation issue we face here. Without any apparent argument to the contrary, the court simply accepted the preeminence of administrative guidance from the

(continued . . .)

[¶24.]        Under the circumstances, we conclude that the ALJ erroneously applied the causation standard in the Self-Employment Rule and should not have concluded Bracken was ineligible for PUA benefits.  By reading a "direct result" provision into the Self-Employment Rule, the ALJ overlooked key textual distinctions and effectively amended the rule, creating an artificially heightened causation standard for self-employed individuals.  But in addition to this error, the ALJ's determination is at odds with other aspects of the Self-Employment Rule's text.

[¶25.]        For instance, the ALJ's suggestion that Bracken's bed and breakfast had to be closed in order for her to qualify for PUA benefits overlooks the plain language of the Self-Employment Rule, which requires no such thing.  In fact, the Self-Employment Rule expressly states that self-employed individuals can qualify for PUA benefits "*even in the absence of a suspension of services.*"
U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Change 4 (January 8, 2021) (UIPL 16-20), at 8 (emphasis added).

[¶26.]        Beyond this, the Self-Employment Rule also extends eligibility to self-employed individuals "who experienced a *significant diminution of their customary*

---

(. . . continued)

United States Department of Labor about how to read the Self-Employment Rule to include a "direct result" causation standard.  *See Martin*, 507 P.3d at 851.  But here the correct interpretation of the Self-Employment Rule is squarely presented, and we can interpret the unremarkable "because of" text using traditional methods of interpretation and without the need for administrative guidance.  And in any event, the result in *Martin* did not turn on a direct/indirect distinction, but rather a failure of proof by the claimant who confessed uncertainty as to what had diminished the need for his services.  *Id.*

*or usual services . . . ."* *Id.* (emphasis added). Here, the ALJ specifically found that Bracken's bed and breakfast had guests before the COVID-19 pandemic began but had no guests as of May 2020. It is difficult to conceive how this would not constitute a "significant diminution" of the business's "customary or usual services."

[¶27.] Finally, we address the Department's alternative argument that "even if this Court refused to apply the direct/indirect analysis[,] . . . there is simply a complete failure of evidence to support a causal finding under [the Self-Employment Rule] that Bracken's reduction in business was 'because of' COVID-19." We view the record differently and so did the ALJ whose findings make clear that the COVID-19 Public Health Emergency had a significant adverse impact upon Bracken's business to the point she had no customers by May 2020.

[¶28.] The Department has not challenged these findings, and, consequently, we do not believe the Department's alternative sufficiency of the evidence argument is properly before us. Indeed, the only basis identified by the ALJ for Bracken's PUA ineligibility was what we have concluded to be an erroneous interpretation and application of the Self-Employment Rule.

[¶29.] We reverse.

[¶30.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.