#30314-aff in pt & rev in pt-PJD
**2024 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LONNIE REIDBURN,                                    Claimant and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF
LABOR AND REGULATION,
REEMPLOYMENT ASSISTANCE
DIVISION,                                           Agency and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CLARK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CARMEN MEANS
Judge

\* \* \* \*

SUSAN Y. JENNEN of
Boos Jennen Law Firm
Clark, South Dakota                                 Attorneys for claimant and
                                                    appellant.


SETH A. LOPOUR
COURTNEY S. CHAPMAN of
Woods, Fuller, Shultz &
    Smith, P.C.
Sioux Falls, South Dakota                           Attorneys for agency and
                                                    appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 8, 2024
OPINION FILED **04/10/24**

#30314

DEVANEY, Justice

[¶1.] Lonnie Reidburn appeals the circuit court's decision affirming the administrative law judge's (ALJ) determination that he must repay $24,690 in pandemic unemployment benefits he received from the South Dakota Department of Labor, Reemployment Assistance Division (Department). The ALJ found that while Reidburn, who was self-employed, experienced a significant reduction in services during the COVID-19 pandemic, he was not eligible for benefits because his reduction in services was not directly the result of the pandemic. Reidburn also appeals the circuit court's denial of his request for attorney fees. We affirm in part and reverse in part.

## Factual and Procedural Background

[¶2.] Reidburn is a self-employed insurance agent, selling home, auto, commercial, health, and farm insurance policies for Farmers Union Insurance. His income is based on commissions he receives for all new policies and renewals. In 2019, he reported $55,862 in gross earnings. Reidburn testified that to procure new policies and renewals of existing policies, he is required to conduct in-person visits at the client's home or place of business so that he can perform inspections, take measurements and pictures, and obtain handwritten signatures.

[¶3.] During the COVID-19 pandemic, Reidburn experienced a significant reduction in his ability to procure new policies and renewals because existing and prospective clients told him that they did not want him to make in-person visits to their homes or places of business and Reidburn had no software or other online alternative to allow him to avoid in-person visits. As a result of his inability to

procure new policies and renewals, Reidburn's income decreased. He reported $44,625.91 in gross earnings in 2020.

[¶4.] In March 2020, Congress passed the CARES Act, creating a temporary program for self-employed individuals to receive unemployment benefits. 15 U.S.C. § 9201. The program provided up to 39 weeks of unemployment benefits for individuals who would not otherwise qualify for traditional unemployment benefits. The federal program was administered through the states.

[¶5.] On April 20, 2020, Reidburn completed an online application for Pandemic Unemployment Assistance (PUA) through the Department. The Department determined Reidburn was eligible to receive PUA benefits effective February 2, 2020, and in response, Reidburn submitted weekly requests for PUA benefits. The Department issued Reidburn benefits for 39 weeks, the maximum number of weeks initially allowed under the program. For weeks ending February 2, 2020 through October 31, 2020, the Department issued Reidburn $414 in PUA benefits. For the weeks of April 4, 2020 through July 25, 2020, the Department issued him an additional $600 in federal pandemic unemployment benefits. In total, Reidburn received $26,346 in benefits.

[¶6.] On January 8, 2021, after Congress extended the temporary unemployment relief program, Reidburn reapplied for PUA benefits with the Department by submitting another online application. The Department initially sent Reidburn a notice on January 28 that he was eligible to receive a $414 weekly benefit. However, prior to issuing him a payment, a representative from the Department contacted Reidburn to inquire further about his loss of income, and

after this discussion, the representative determined that Reidburn's loss of income was not the direct result of the pandemic. On February 8, 2021, the Department issued Reidburn a determination of ineligibility.

[¶7.] Also on February 8, the Department issued Reidburn a notice and determination of an overpayment of $26,346, the entire amount previously paid to him. The notice contained a sentence indicating that "[t]he department cannot waive recovery of this overpayment since [Reidburn was] not without fault[.]" No additional information was provided in the notice about the reason for the Department's determination that Reidburn was ineligible to receive the benefits previously paid or that he was not without fault. A box near the top of the notice contained the following statement: "If you believe this determination is incorrect, you have the right to file an appeal and/or request a waiver on or before **2/23/2021**. Your rights are further explained on the reverse side of this form." (Bold in original.)

[¶8.] On February 9, Reidburn, acting pro se, faxed a letter to the Department, noting his receipt of the notice of overpayment and that the letter said he was "not without fault but can appeal this." Reidburn related that he contacted the unemployment division because he "wanted to make sure [he] was doing the steps and forms right." He maintained that he submitted his 2019 income taxes or W-2s as requested showing exactly what he earned and did not hide anything. He further noted that he had "filled out the weekly forms exactly the way it should be," and he then explained the reasons for his loss of income. His letter ended with the statement, "So yes I am appealing this matter." Reidburn eventually obtained

counsel, and his attorney issued the Department a letter on April 12, 2021, clarifying that Reidburn's letter was intended to be an appeal and a request for a waiver.

[¶9.]     A telephonic administrative hearing was held on October 22, 2021, before an ALJ. The Department was not represented by counsel. Rather, Jane Husman appeared as the Department's representative. She testified and answered questions posed by counsel for Reidburn. Reidburn also testified and answered questions posed by Husman, his attorney, and the ALJ.

[¶10.]     During her testimony, Husman related the information Reidburn reported in his application and weekly requests and the details concerning the amounts the Department issued as payments during the 39 weeks. She also testified that after Reidburn re-applied for benefits in January 2021, a representative contacted him to acquire additional information. At Husman's request and over Reidburn's objection, the ALJ admitted into evidence the notes detailing this representative's conversation with Reidburn. Husman thereafter testified that after reviewing Reidburn's claim, the additional information provided to the representative, and "additional guidance the agency had accumulated from the federal Department of Labor," the Department determined Reidburn did not meet the eligibility requirements and had not been eligible for the benefits he previously received.

[¶11.]     After noting that the notice of ineligibility issued to Reidburn did not identify the reason for the Department's determination, counsel for Reidburn asked Husman to explain the Department's rationale for its determination. Husman

testified that the notes from the representative's conversation with Reidburn indicated the representative's view that Reidburn's reduction in income was indirectly, rather than directly, the result of the pandemic. Counsel then asked Husman why the Department did not inform Reidburn of its reason for the determination of ineligibility and overpayment until her testimony at this hearing. Husman replied that she could not say definitively if anyone ever provided that explanation to Reidburn. She stated that "[t]here are no notes documenting that [Reidburn] spoke with anyone or requested further explanation." She agreed that her record contained no documentation that the Department ever informed Reidburn of its reason for ineligibility. When asked whether the Department had any information to support its determination that Reidburn was not without fault, Husman testified, "I do not have any information available to support that finding."

[¶12.] Reidburn testified about how he earns income as a self-employed insurance agent. In regard to his application for PUA benefits, he testified that he answered all questions truthfully and provided all information required, although he claimed that the online application process was "[v]ery confusing."[1]

[¶13.] To support the statement in his application that his income was reduced because COVID affected his ability to sell insurance policies, Reidburn testified that despite continuing to try to procure new policies and renewals, his "[c]lients told [him] not to visit their homes." He claimed that approximately 60% of

---

1. In particular, he noted that even though he indicated he was self-employed, the application had him enter employer information. He also testified that when asked to select the type of pay he receives, he answered, "monthly," because the question did not have an option for him to indicate that his pay was commission based.

his clients fell within what the government health guidelines regarded as at risk because of their age and that 75% were at risk because of underlying health conditions. He further testified about one particular instance in 2020 with an existing "farm client named Bill who did not want [him] to come to his farm for the renewal." According to Reidburn, because he could not go to Bill's home, he was unable to complete a policy renewal, which he testified was valued at $6,125.35.

[¶14.] During cross-examination, Husman asked Reidburn whether Farmers Union Insurance required in-person meetings or whether that was his personal practice. He replied, "Both." However, he explained that Farmers would not allow him to renew a policy without a personal visit and that Farmers did not provide any online application or renewal alternative. Husman did not ask questions challenging the veracity of Reidburn's testimony that his clients did not want him to conduct in-person visits because of COVID or that his income was reduced as a result.

[¶15.] In closing remarks, counsel for Reidburn noted that Reidburn established through his testimony and evidence that, as claimed in his application for PUA benefits, he experienced a significant reduction in services because of COVID when his clients told him not to come to their homes for fear of contracting COVID. Counsel further argued that the "[r]easons given by [Reidburn's] clients show the direct correlation between his decline in business and the COVID public health emergency" and, thus, his entitlement to benefits. Counsel noted that there is no language in the CARES Act requiring that the government impose restrictions on the business before a self-employed individual is deemed eligible and claimed

that the Department does not have authority to impose new criteria outside the existing eligibility provisions. Counsel therefore requested that the ALJ reverse the Department's determination of ineligibility or, in the alternative, reverse the at-fault determination and waive the requirement that Reidburn repay the amount he had been overpaid.

[¶16.] The ALJ issued a written decision on March 9, 2022. The ALJ determined that Reidburn was eligible for PUA benefits during the weeks in which he was suffering from COVID and self-isolated, and this determination is not at issue on appeal. As it relates to the other 35 weeks, the ALJ found that Reidburn "experienced a significant diminution of services" and that "[b]etween 2019 and 2020, [Reidburn's] gross income from self-employment was reduced by over 20 percent." Further, the ALJ found that "[t]he reason [Reidburn] experienced a diminution in services was because his clients did not want him to come to their homes."

[¶17.] Nevertheless, the ALJ determined that Reidburn did not meet any of the CARES Act eligibility terms and was thus ineligible for PUA benefits for these 35 weeks. Even though the pandemic may have impacted his clients' decisions to preclude Reidburn from entering their homes or places of business, the ALJ reasoned that "[t]hese were the individual and independent decisions of his clients that kept him from doing business with them" and "it was ultimately their decisions which resulted in any loss of business for [Reidburn.]" Thus, the ALJ held that any loss Reidburn experienced "would fairly be considered indirect."

[¶18.] However, the ALJ rejected the Department's at-fault determination and instead found that Reidburn was not at fault for the overpayment. But the ALJ then concluded that Reidburn's request for a waiver was untimely because his February 9 letter did not request a waiver or contain statements that would put the Department on notice that he was requesting a waiver. The ALJ further noted that although Reidburn's attorney asked in an April 2021 letter that Reidburn's earlier letter be considered a request for a waiver, the letter from the attorney was not filed within 15 days of the notice of overpayment as required by the administrative rules.

[¶19.] Reidburn appealed the ALJ's decision to the circuit court. In his statement of issues, Reidburn asserted that the ALJ erred in determining that he was ineligible for PUA benefits, that he was overpaid $24,690 in benefits, and that his request for a waiver was untimely. He further asserted that he is entitled to a waiver and an award of attorney fees. The parties submitted pre-argument briefs. Notably, in its brief, the Department argued, for the first time, that Reidburn failed to present sufficient evidence, via texts, emails, or other witness testimony, to the ALJ to establish that his clients did not want him to come into their homes and businesses because of COVID-19.

[¶20.] The circuit court issued a memorandum decision in March 2023, affirming the ALJ's decision regarding the interpretation of the governing federal law. The court did not address the Department's sufficiency of the evidence

argument.  Reidburn now appeals to this Court, asserting multiple issues,[2] including:

1.      Whether the circuit court erred in affirming the ALJ's determination that Reidburn was ineligible to receive PUA benefits under the CARES Act.

2.      Whether the circuit court erred in denying Reidburn's request for an award of attorney fees and costs.

## Standard of Review

[¶21.]      Under SDCL 1-26-36, "we examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Pirmantgen v. Roberts Cnty.*, 2021 S.D. 5, ¶ 20, 954 N.W.2d 718, 724 (citation omitted).  However, "[w]hen the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable" under the de novo standard of review.  *Id.* (citation omitted).

## Analysis and Decision

### 1.    *Whether the circuit court erred in affirming the ALJ's determination that Reidburn was ineligible to receive PUA benefits under the CARES Act.*

[¶22.]      Reidburn claims he is eligible for PUA benefits under multiple provisions of the CARES Act, namely subsections (gg), (jj), and (kk).  15 U.S.C. § 9021(a)(3)(A)(ii)(I).  In regard to subsection 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(kk), Reidburn argues that based on this Court's recent decision in *Bracken v. South*

---

2.    Reidburn also asserts that the circuit court erred in affirming the ALJ's determination that he was overpaid $24,690 in benefits and in affirming the ALJ's determination that his waiver request was untimely.  In light of our holding on Reidburn's first issue, it is not necessary to address these additional issues.

*Dakota Department of Labor and Regulation, Reemployment Assistance Division,* 2023 S.D. 22, ¶ 24, 991 N.W.2d 89, 94, "the ALJ improperly incorporated a 'direct result' requirement" and created "'an artificially heightened causation standard for self-employed individuals.'" He further claims that he established, consistent with the claimant in *Bracken*, that he experienced a significant diminution in services because of COVID-19. He thus requests that this Court reverse the ALJ's decision that he was ineligible for these benefits.

[¶23.] In response, the Department concedes that the ALJ and circuit court "utilized the now-rejected direct/indirect standard," and as such, this Court could reverse "on this basis alone[.]" However, the Department requests that we nevertheless affirm the ALJ's decision because, in the Department's view, Reidburn "fundamentally failed to meet his burden of proof or provide any evidence to support his contention that his reduction in business was 'because of' COVID-19 under (kk)(1)." In making this argument, the Department refers to a lack of "affirmative evidence" such as emails, texts, letters, or other records from his customers supporting Reidburn's claim that they would not allow him into their homes because of COVID-19. The Department also faults Reidburn for not presenting witness testimony besides his own.

[¶24.] In *Bracken*, the Department made the same sufficiency of the evidence argument to the circuit court and this Court declined to address the claim, deeming it not "properly before us." 2023 S.D. 22, ¶ 28, 991 N.W.2d at 95. In so stating, we noted that the Department "asserted for the first time [before the circuit court] that the evidence was insufficient to support a determination that there had been a

significant diminution in the usual business activity at Bracken's bed and breakfast." *Id.* ¶ 11, 991 N.W.2d at 92.

[¶25.] Here, a review of the transcript and submissions to the ALJ reveals that the Department did not argue that Reidburn failed to present sufficient evidence to support his testimony that he experienced a significant reduction in services. The Department also did not challenge the veracity of Reidburn's testimony before the ALJ that such reduction occurred in response to his clients telling him that because of COVID-19 they did not want him to come into their homes. Similarly, the Department did not dispute Reidburn's tax or other financial information provided in his application and weekly submissions. Finally, Husman, the Department's representative who cross-examined Reidburn, did not challenge his credibility in any regard. It is apparent the Department simply relied on its view, albeit incorrect in light of *Bracken*, that Reidburn was ineligible for PUA benefits because his undisputed reason for the significant reduction in services was not a *direct* result of the COVID-19 pandemic.

[¶26.] Because the Department did not raise the sufficiency of the evidence argument at Reidburn's administrative hearing, we decline to address the argument on appeal. It is a general rule of procedure that an appellate court does not address issues parties raise for the first time on appeal (here, to the circuit court). *In re LAC Minerals (USA), LLC*, 2017 S.D. 44, ¶ 14, 900 N.W.2d 283, 289. Further, because it is clear under *Bracken* that the ALJ erred in its interpretation and application of the governing law, we reverse the ALJ's determination that Reidburn was ineligible to receive PUA benefits for 35 of the 39 weeks at issue. In

light of this conclusion, it is unnecessary to address Reidburn's additional arguments that he was eligible for PUA benefits under subsections (gg) and (jj).

> ### 2. Whether the circuit court erred in denying Reidburn's request for an award of attorney fees and costs.

[¶27.] Reidburn asserts the circuit court erred in not awarding him attorney fees under SDCL 15-17-51. That statute provides:

> If a civil action, including an action for appeal of a zoning decision, or special proceeding is dismissed or requested relief is denied and if the court determines that it was frivolous or brought for malicious purposes, the court shall order the party whose claim, cause of action, or defense was dismissed or denied to pay part or all expenses incurred by the party defending the matter, including reasonable attorneys' fees.

*Id.* According to Reidburn, attorney fees were warranted because the Department has acted with improper motive beginning with its notice of ineligibility. In particular, he refers to the Department changing its interpretation of the eligibility rules in a manner that does not align with the information required by the application process; the Department's failure to give an explanation of its later basis for determining ineligibility; the Department's refusal to consider his request for a waiver as timely; and its continued demand for repayment after this Court issued the *Bracken* decision. He further argues that "the Department fails to take any responsibility or show any humility regarding the difficulties it has caused innocent individuals such as [him] by asserting novel legal theories to pursue the recovery of benefits distributed under the Department's own control and procedures." In his view, "[t]he Department has abused its authority as it works to seek recovery of

funds from past recipients who applied properly and in good faith, without any possible foresight of the Department's recovery claims to come."

[¶28.]        In response, the Department argues that Reidburn cannot establish the circuit court erred because under SDCL 15-17-51, fees are allowable when the "proceeding is dismissed or requested relief is denied and if the court determines that it was frivolous or brought for malicious purposes[,]" and here, the circuit court *affirmed* the ALJ's decision allowing the Department to recoup amounts overpaid to Reidburn.  It alternatively contends that there is no evidence that the Department brought the case for frivolous or malicious purposes.

[¶29.]        This Court has explained that "[a] frivolous action exists when the proponent can present no rational argument based on the evidence or law in support of the claim[.]" *Healy v. Osborne*, 2019 S.D. 56, ¶ 34, 934 N.W.2d 557, 566–67 (citation omitted).  Further, "[t]o fall to the level of frivolousness there must be such a deficiency in fact or law that no reasonable person could expect a favorable judicial ruling." *Ridley v. Lawrence Cnty. Comm'n*, 2000 S.D. 143, ¶ 14, 619 N.W.2d 254, 259.  "Malice, on the other hand, exists when the proceedings are instituted primarily for an improper purpose." *Healy*, 2019 S.D. 56, ¶ 34, 934 N.W.2d at 567 (quoting *Stratmeyer v. Engberg*, 2002 S.D. 91, ¶ 20, 649 N.W.2d 921, 926).  In defining what constitutes an improper purpose, we noted that such can occur when "the plaintiff in the original action was actuated by any unjustifiable motive, as where he did not believe his claim would be held valid, or where his primary motive was hostility or ill will, or where his sole purpose was to deprive the defendant of a beneficial use of his property or to force a settlement having no relation to the

merits of the claim." *Stratmeyer*, 2002 S.D. 91, ¶ 20, 649 N.W.2d at 926 (citation omitted).

[¶30.] When the Department issued the notice of overpayment to Reidburn, *Bracken* had not yet been decided by this Court. The Department issued its notice based on its interpretation that the applicable federal law requires that the COVID-19 pandemic be the direct cause of the claimant's significant reduction in services. Reidburn does not argue that the Department's interpretation, albeit ultimately wrong under the analysis of the governing law we provided in *Bracken*, was without merit at the time of the Department's decision or that the Department had no basis in law to seek repayment. Rather, Reidburn faults the Department for its deficient procedures for determining eligibility and its actions when it later reversed course and determined him to be ineligible.

[¶31.] Although we find some aspects of how the Department handled this matter to be concerning,[3] it is important to note that Reidburn did not file a motion for *appellate* attorney fees with this Court. *See, e.g., Strong v. Gant*, 2014 S.D. 8,

---

3. The Department failed to give Reidburn notice or information prior to the hearing before the ALJ about its reasons for deeming him ineligible. And although nothing in the record reveals that Reidburn was directed to bring documentary evidence to the hearing to support the representations he made in his application and weekly requests for PUA benefits, the Department, in response to Reidburn's appeal, argued, for the first time, that Reidburn failed to present sufficient evidence at the hearing. Further concerning, Husman testified that the Department did not have any information to support the Department's statement in its notice of overpayment that it could not waive the overpayment because Reidburn was not without fault. Thus, this determination, which the Department thereafter said Reidburn failed to timely challenge, lacked any support from the outset. Finally, despite this Court's ruling in *Bracken* rejecting this same type of unpreserved sufficiency of the evidence argument, the Department elected to proceed with it in this appeal.

¶ 25, 843 N.W.2d 357, 364 (awarding appellate attorney fees because "Strong has not presented an acceptable argument based upon the law or evidence in support of her claims" on appeal); *see also* SDCL 15-26A-87.3 (providing the requirements for a motion for appellate attorney fees). Rather, he challenges only the circuit court's decision denying attorney fees. Thus, the question whether the Department's position on appeal in light of *Bracken* warrants an award of appellate attorney fees is not before us. As it pertains to the circuit court's decision, because *Bracken* had not been decided at the time of that proceeding, the Department had a rational argument that Reidburn was not entitled to PUA benefits. We further conclude that the Department's argument that Reidburn's request for a waiver was untimely was not frivolous. Moreover, the circuit court did not dismiss or deny the Department's determinations regarding Reidburn's eligibility for PUA benefits or that he was overpaid such benefits. We therefore affirm the circuit court's denial of Reidburn's motion for attorney fees under SDCL 15-17-51.

[¶32.]     Affirmed in part and reversed in part.

[¶33.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.