# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0597, <u>Appeal of Leonard LaPadula</u>, the court on December 20, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The petitioner, Leonard LaPadula, III, appeals a decision of the New Hampshire Department of Employment Security (DES) appeal tribunal that he was ineligible for Pandemic Unemployment Assistance (PUA). We affirm.

We briefly recite the procedural history of this case. The petitioner applied for unemployment benefits in August of 2020. In a series of decisions, DES determined that the petitioner was ineligible for unemployment benefits and the petitioner appealed these determinations to the DES appeal tribunal (tribunal).[1] The tribunal denied the petitioner's appeals because the petitioner did not reside in the United States and had no wages in the preceding three years. The petitioner subsequently requested that the DES Commissioner reopen some of the tribunal's decisions. Because the tribunal's decisions finding the petitioner ineligible for unemployment benefits did not explicitly reference PUA — and therefore could reasonably be construed as a denial of only regular state unemployment compensation (UC) — the Commissioner reopened the relevant tribunal decisions. The Commissioner returned them to the tribunal for a consolidated <u>de novo</u> hearing "to permit consideration of all issues of relevance to [the petitioner's] potential eligibility for PUA benefits." <u>See</u> RSA 282-A:60, :61 (2023).

Based on its <u>de novo</u> review of the record, <u>see</u> RSA 282-A:56 (2023), the tribunal determined that the petitioner was ineligible for PUA because: (1) the petitioner failed to meet PUA's residency requirements for individuals applying for benefits from outside the United States; and (2) the petitioner failed to carry his burden of showing, by a preponderance of the evidence, that he had suffered a "loss of income and a loss of hours as a result of the pandemic." The petitioner again sought to have the Commissioner reopen the case. The Commissioner denied the petitioner's request. The petitioner then appealed the tribunal's determination that he was ineligible for PUA to the appellate board (board). The board affirmed. This appeal followed.

---

[1] Although the petitioner received a notice of monetary eligibility for PUA, that notice clearly stated that it was "NOT A GUARANTEE OF PAYMENT" and that the petitioner would have to meet other eligibility criteria.

Judicial review of DES decisions is controlled by RSA 282-A:67. See RSA 282-A:67, II (2023) (setting forth the procedure for appealing "a final decision of the appeal tribunal as reversed, modified, or affirmed by the appellate board"). When reviewing DES decisions, we "reverse or modify the decision of the appeal tribunal . . . only if the substantial rights of the appellant [were] prejudiced" because, inter alia, the tribunal's conclusions are "[c]learly erroneous in view of the substantial evidence on the whole record" or "[a]ffected by other error of law." RSA 282-A:67, V (2023). We do not "substitute [our] judgment for that of the appeal tribunal as to the weight of the evidence on questions of fact." Id. Our appellate jurisdiction is limited to reviewing the record of the tribunal for errors of law. See Appeal of Mullen, 165 N.H. 344, 345 (2013).

The petitioner identified numerous issues in his Rule 10 appeal document. However, when we accepted the appeal we limited the issue before the court to "determining the extent to which 15 U.S.C. § 9021(a)(3)(A)(ii)(I)'s 'otherwise able to work and available to work within the meaning of state law' language implicates RSA 282-A:9's definition of 'employment' and RSA 282-A:32's criteria for disqualification, and whether [DES] correctly applied these statutes in its decision deeming the [petitioner] ineligible to receive [PUA] benefits." On appeal, the petitioner argues that he was "otherwise able to work and available to work within the meaning of applicable State law" and that the state law criteria for disqualification under RSA 282-A:32 do not impact eligibility for PUA. We disagree.

PUA incorporates various provisions of state unemployment law. To be eligible for PUA an individual needed to meet the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) definition of a "covered individual," which required, in relevant part, that an individual: (1) be ineligible for regular state UC or another form of pandemic unemployment relief; and (2) self-certify that the individual "is otherwise able to work and available for work within the meaning of applicable State law" except that the individual is unable to work due to one of the COVID-19 related reasons enumerated in the Act. Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 2102, 134 Stat. 281, 313 (2020) (codified as amended at 15 U.S.C. § 9021(a)(3)(A)(i)-(ii) (amended 2021)) (emphasis added). By its plain language, the CARES Act incorporates certain provisions of state law. See id. In addition to the language of the CARES Act itself, the U.S. Department of Labor provided guidance regarding the implementation of PUA and the application of PUA eligibility requirements through Unemployment Insurance Program Letters (UIPL) No. 16-20, and No. 16-20, Changes 1, 2, 4, 5, and 6. See, e.g., UIPL No. 16-20 at 1, https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20.pdf (last visited December 10, 2024). As relevant here, that guidance clarifies the extent to which state law applies to claims for PUA. See UIPL No. 16-20, Change 4, at I-17. It provides that "provisions of the applicable state

law that apply to claims for PUA include, but are not limited to . . . [d]isqualification [and] . . . [a]bility to work and availability for work, absent a COVID-19 related circumstance." Id. Accordingly, we conclude that the CARES Act eligibility provisions incorporate state law provisions related to a claimant's ability to and availability for work and disqualification from benefits.

The petitioner argues that the state law provisions that disqualify individuals from receiving regular state UC cannot apply to PUA because such a construction of the CARES Act leads to the absurd result that "the qualifications for PUA are exactly the same as state UC." We are not persuaded.

The CARES Act removed some but not all of the eligibility requirements for regular state UC. For example, the CARES Act removed state law monetary eligibility requirements and expanded benefits to self-employed individuals. Compare RSA 282-A:32, I, :25 (2023) (monetary eligibility requirements), :32, I(e) (2023) (disqualification of self-employed individuals), with 15 U.S.C. § 9021(a)(3)(A)(ii)(II) (expanding benefits to self-employed individuals and individuals without sufficient work history). Accordingly, an individual can be ineligible for regular state UC due to one of the disqualifications removed by the CARES Act and still be ineligible for PUA due to a state law disqualification provision not specifically removed by the Act. Therefore, we conclude that the tribunal did not err when, in determining whether the petitioner is entitled to receive PUA benefits, it looked to the provisions of the New Hampshire Unemployment Compensation Law, RSA chapter 282-A (2023 & Supp. 2023), related to an individual's ability and availability for work, see RSA 282-A:9 (2023), and disqualification from receiving regular state UC, see RSA 282-A:32 (2023).

We now turn to whether the tribunal correctly applied the applicable provisions of state law to the petitioner's claim when it determined his eligibility for PUA. We assume, without deciding, in the petitioner's favor that he satisfied the requirement in the CARES Act that he self-certify that he was able to work and available for work within the meaning of state law, and instead focus our analysis on whether the tribunal erred in how it applied the state law disqualification criteria under RSA 282-A:32 to the petitioner.

The New Hampshire unemployment disqualification provision at issue states, in relevant part, that "[a]n individual shall be disqualified for benefits . . . [f]or any week during which the individual resides other than in New Hampshire, another state, the District of Columbia, Puerto Rico, the Virgin Islands or a contiguous country with which the United States has an agreement with respect to unemployment compensation." RSA 282-A:32, IV (2023) (emphasis added). It is undisputed that at the time the petitioner applied for PUA benefits he was located overseas in either Georgia or Turkey.

The petitioner asserts that this fact does not disqualify him from receiving PUA benefits because New Hampshire was his state of residence. He claims that he met the residency requirements provided for in RSA 21:6-a and that "residence [is] 'designated' by the individual and not . . . their physical location." See RSA 21:6-a (2020) (defining "residency" for statutory construction purposes). DES counters that the petitioner's physical presence outside of a qualifying location, as set out in RSA 282-A:32, IV, at all times relevant to his PUA claim disqualifies him from receiving benefits because he did not reside in a qualifying jurisdiction. We agree with DES.

The unemployment compensation statute does not specifically define the term "reside" or what is required to be considered a resident of a qualifying jurisdiction for unemployment compensation purposes. See RSA 282-A:1-:23 (2023) (definitions). RSA chapter 21, however, sets forth definitions that apply "[i]n the construction of all statutes . . . unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." RSA 21:1 (2020) (emphasis added). A person is a New Hampshire "resident" under RSA 21:6 and has a New Hampshire "residence" under RSA 21:6-a if they live in New Hampshire and have indicated through all of their actions that New Hampshire is their "most important" place of physical presence, to the exclusion of all other places in which they may live. Casey v. N.H. Sec'y of State, 173 N.H. 266, 273 (2020) (per curiam). The phrase "to the exclusion of all others" does not require that, to have a New Hampshire "residence" under RSA 21:6-a, the person cannot also live elsewhere. See id. Rather, it means only that there is no other place that the person, through all of their actions, has demonstrated is their "most important" place of physical presence. Id. In other words, although a person may live in more than one place during any year, they can have only one "residence" within the meaning of RSA 21:6-a. Id.

The petitioner had the burden of proving that he resided in New Hampshire or another qualifying jurisdiction at the time applicable to his PUA claim. See 15 U.S.C. § 9021(c)(5)(B)(ii); UIPL No. 16-20, Change 1, at I-14 (providing that PUA appeals and hearings follow the provisions of state law applicable to regular UC proceedings); see also N.H. Admin. R., Emp 207.26 (providing that the party asserting a proposition bears the burden of "proving the truth of the proposition by a preponderance of the evidence"). The tribunal reviewed the evidence the petitioner submitted related to his residency status as part of its de novo hearing. The tribunal found that the petitioner had operated his business from overseas for the preceding five years and that the petitioner did not reside in New Hampshire.

Our review of the evidence in the record before the tribunal supports the conclusion that the petitioner did not meet his burden of proving that he resided in a qualifying jurisdiction at the time relevant to his PUA claim. The

only evidence in the record relevant to the petitioner's residency status is his unsworn assertions regarding his connections to New Hampshire. The petitioner was not living in a qualifying jurisdiction at the time he applied for PUA and, by his own representation, had been living abroad for over five years. Accordingly, New Hampshire was not one of the locations of the petitioner's physical presence for the five years preceding his PUA claim, let alone his "'most important' place of physical presence." Casey, 173 N.H. at 273.

Moreover, the fact that the petitioner's business is incorporated in New Hampshire or that his work may meet the definition of employment under RSA 282-A:9 is not sufficient to establish that he, as an individual, resided in New Hampshire under our residency test. See id. Additionally, by declining to participate in the de novo hearing on PUA eligibility and instead requesting that the tribunal make its decision using the documents he had submitted, the petitioner waived his opportunity to offer testimony or clarify the evidence he submitted into the record. Accordingly, we conclude that the tribunal's ruling that the petitioner did not reside in New Hampshire, or another qualifying jurisdiction, was not clearly erroneous in view of the substantial evidence on the whole record, or affected by other error of law. See RSA 282-A:67, V. We therefore affirm the tribunal's determination.

We note that our decision is consistent with the decisions of other state courts which have determined that individuals living overseas were ineligible for PUA benefits based on state law provisions incorporated by the CARES Act. See Mikheil v. Commissioner of Labor, 171 N.Y.S.3d 606, 608-10 (N.Y. App. Div. 2022) (concluding that claimant who was in Egypt while filing for PUA benefits was not available for work within the meaning of applicable state law because he was outside the country and, therefore, did not satisfy the CARES Act definition of a covered individual); Martin v. Dept. of Workforce Services, 507 P.3d 847, 848-50 (Utah Ct. App. 2022) (concluding that claimant who worked online while living in Colombia during the time relevant to his PUA claim was not eligible for benefits because he was not located in a qualifying jurisdiction under state unemployment law).

In sum, we conclude that the tribunal applied the correct provisions of the New Hampshire Unemployment Compensation Law to the petitioner's claim and affirm its determination that the petitioner was not eligible for PUA benefits because he did not reside in a qualifying jurisdiction at the time relevant to his claim. See RSA ch. 282-A; RSA 282-A:32, IV. The petitioner raises numerous other arguments related to the extent to which the CARES Act implicates state law. As the appealing party, the petitioner has the burden of demonstrating reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014). Based on our review of the record, we conclude that the petitioner has not demonstrated reversible error. See id. Given our ruling on this issue, we need not address the parties' arguments related to the tribunal's alternative ground

for denying the petitioner's claim: that the petitioner failed to demonstrate that he suffered a "loss of income and a loss of hours as a result of the pandemic." See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address parties' other arguments where holding on one issue was dispositive).

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., did not participate in the final vote.

**Timothy A. Gudas,
Clerk**

Distribution:
New Hampshire Department of Employment Security Appellate Board,
    0006-22
Mr. Leonard LaPadula, III
Attorney General
Brandon F. Chase, Esq.
Duncan A. Edgar, Esq.
Nathan W. Kenison-Marvin, Esq.
Francis Fredericks, Supreme Court
Sherri Miscio, Supreme Court
File